IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MOORE, | No. C06-05647 MJJ |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| BROADCOM CORPORATION, ET AL, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Defendants Broadcom Corporation ("Broadcom") and Paul Beard's ("Beard") (collectively, "Defendants") Motion for Summary Judgment. (Docket No. 49.) Plaintiff Mark Moore ("Moore" or "Plaintiff") opposes the Motion. For the following reasons, the Court **GRANTS** the Motion.

## FACTUAL BACKGROUND

This action presents a dispute over the ownership of a patent. The following facts are undisputed unless noted.

**A.    Defendants and the Patent at Issue**

In 1996, Defendant Beard was employed by Norand Technologies ("Norand"), a manufacturer of bar code readers and scanners. (UF ¶ 10.) In the Spring of 1997, Norand was acquired by Intermec, Inc. ("Intermec"). (UF ¶ 11.)

On December 31, 1997, Intermec, while Beard was employed there, filed a provisional application for a patent. (UF ¶ 6.) Beard was the only inventor named on the provisional application. (*Id*.) On December 30, 1998, the provisional application was converted to a

non-provisional application. (UF ¶ 7.) Again, Beard was the only inventor named on the non-provisional application. (*Id*.) On January 9, 2001, the United States Patent Office issued the application as United States Patent No. 6,172,712 (the "'712 patent"). Defendant Beard is the sole inventor listed on the '712 patent. (UF ¶ 2.)

The '712 Patent is entitled "Television with Hard Disk Drive." (UF ¶ 5.) The '712 patent claims an apparatus comprised of a disk drive and a video processing system that simultaneously (1) stores a video feed to a computer-like hard drive or similar storage device; and (2) plays back any part of the stored video while the video feed continues to be stored. (UF ¶ 9; Defs.' Mem. of P. & A. at 3.) The most common use of this invention today is in personal video recorders, which allow a viewer to pause and/or "rewind" a television show while the hard drive continues to record the show. (Defs.' Mem. of P. & A. at 3-4.) The viewer can then fast forward through commercials when playing back the show. (*Id*. at 4.)

In 1998, Beard left the employ of Intermec to focus on his new position at Alation, a startup company that he and Plaintiff Moore started together. (UF ¶ 35; Defs.' Mem. of P. & A. at 4.) On January 19, 1999 Beard executed, and recorded, an assignment conveying all rights to the invention claimed in the '712 patent to Intermec IP Corporation, a holding company for Intermec. (UF ¶ 12.) On February 6, 2001, Intermec IP assigned, and recorded, all rights, title and interest in the '712 patent to its parent company, Unova, Inc. (UF ¶ 14.) On February 6, 2003, Defendant Broadcom recorded an assignment with the United States Patent Office confirming its acquisition of the '712 patent. Defendant Broadcom now owns all rights, title and interest in the '712 patent. (UF ¶ 1.)

**B.     Plaintiff Moore**

Moore began working as a software engineer at Compaq Computer in 1994. (UF ¶ 19.) When Compaq closed its San Bruno office in February 1997, several individuals, including Moore and Beard, formed their own company under the name "Not Limited," which was subsequently changed to "Alation." (UF ¶ 21-22; Harding Decl., Exh. C at 65:8-13.) Under these auspices, and pro se, Beard and Moore filed for more than three other patents. (UF ¶ 23-25.) In May 2000, Cypress Semiconductor Corp. acquired Alation. (UF ¶ 26.)

"Pause Live TV," as the '712 Patent invention was referred to, was an idea discussed by

2

Alation members at multiple meetings in1997, but the company decided to pursue the creation of a wireless home network and not the Pause Live TV idea at that point. (Harding Decl., Exh. C at 106-110.) Defendant Beard then decided to pursue the patent with his current employer, Intermec. (*See id.* at 422:15-423:10.) Defendant Beard provided Moore with a copy of the provisional application around December 31, 1997, the date that the provisional application was filed. (UF ¶ 16.) Moore was aware of the contents of the provisional application on or about December 31, 1997, and was aware that he was not named as an inventor on the provisional application. (UF ¶ 17.) Moore had knowledge that the '712 patent issued on or about January 9, 2001, the date that the '712 patent issued.

**C.    Procedural History**

On September 14, 2006, Plaintiff filed the Complaint in this action seeking (1) to be declared a co-inventor on the '712 Patent; and (2) an award of damages for unjust enrichment. (*See* Complaint, Docket No. 1.) In this Motion, Defendants seek an order granting summary judgment on the basis of laches, estoppel, inventorship and statutes of limitation. (*See* Defs.' Mem. of P. & A. at 1.)

**LEGAL STANDARD**

**A.    Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the

substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

### B. Laches

To invoke the laches defense Defendants have the burden of proving that (1) "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant", and that (2) "the delay operated to the prejudice or injury of the defendant." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc). The application of the equitable defense of laches is committed to the sound discretion of the district court. *Id.* A court must look at all of the particular facts and circumstances of each case and weigh the equities of the parties. *Id.*

"*Prima facie*, the underlying critical factors of laches are presumed upon proof that the [omitted inventor] delayed filing suit for more than six years after actual or constructive knowledge" of the claim.[1] *Id.* at 1035-36. Where the presumption applies, the two facts of unreasonable delay and material prejudice "*must* be inferred, absent rebuttal evidence." *Id.* at 1037 (emphasis in original). The presumption of laches shifts the burden of production (but not the burden of persuasion) to the plaintiff to offer proof either that the patentee's delay was reasonable, or that the defendant suffered no prejudice, or both. *Id.* at 1038. The plaintiff must provide evidence sufficient to put the existence of either the presumed fact of unreasonable delay, or the presumed fact of prejudice, into genuine dispute – i.e., sufficient to support a finding of the nonexistence of the presumed fact. *Id.* at 1037. If the plaintiff provides such evidence, raising a genuine issue

---

[1] While *Aukerman* was decided in the context of a patent infringement case, the rules announced in *Aukerman* apply with equal force in the inventorship context. *See Advanced Cardiovascular Systems, Inc. v. Scimed Life*, 988 F.2d 1157, 1163 (Fed. Cir. 1993) (holding that the rebuttable presumption of laches described in *Aukerman* applies to claims of inventorship as well as patent infringement).

4

respecting either unreasonable delay or prejudice, the presumption disappears entirely as to both factors and the accused infringer is put to its proof on the entirety of the laches defense. *Id.* at 1038; *see also Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992) ("the presumption of laches which arises after a defendant proves a six-year delay is a 'double-bursting bubble' which the plaintiff punctures with introduction of evidence sufficient to raise a genuine dispute as to *either* delay or prejudice.") (emphasis in original).

Ultimately, the establishment of the factors of undue delay and prejudice, whether by actual proof or by the presumption, does not mandate recognition of a laches defense in every case. *Aukerman,* 960 F.2d at 1036. Laches remains an equitable judgment of the trial court in light of all the circumstances. *Id.* If the decision on laches is made on summary judgment, there must be no genuine issues of material fact, the burden of proof of an issue must be correctly allocated, and all pertinent factors must be considered. *Id.* at 1039.

## ANALYSIS

### A. Presumption of Laches Applies

The Court first determines if the presumption of laches applies to the instant case. In infringement actions, the period of delay "is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit" but cannot begin prior to the issuance of the patent. *Aukerman,* 960 F.2d at 1032. However, in cases for correction of inventorship, the Circuit has held that "[w]hen applying the equitable doctrine of laches in order to bar a claim, the period of delay is measured from when the claimant had actual notice of the claim or would have reasonably been expected to inquire about the subject matter" and *not* from the date of the issuance of the patent. *See Advanced Cardiovascular Systems*, 988 F.2d at 1161-62.

Here, Defendant Beard provided Moore with a copy of the provisional application around December 31, 1997, the date that the provisional application was filed. (UF ¶ 16.) Moore was aware of the contents of the provisional application on or about December 31, 1997, and was aware that he was not named as an inventor on the provisional application. (UF ¶ 17.) Thus, Defendants argue, more than eight years passed between the moment Plaintiff knew, or reasonably should have

5

known, that Defendants had filed an application for a patent on the invention, and failed to name him, and the time Plaintiff filed suit.

Plaintiff, on the other hand, without citation to a single case, argues that the laches presumption does not apply to an action to correct inventorship and that the period of delay was less than the six years required to create the presumption of laches. (*See* Plf.'s Opp. at 14.) As to Plaintiff's first contention, that the presumption of laches does not apply to inventorship claims, the Federal Circuit has held to the contrary. *See Advanced Cardiovascular Systems*, 988 F.2d at 1163 (holding that the laches presumption applies to an action to correct inventorship).

As to Plaintiff's second argument, the Circuit, in *Advanced Cardiovascular Systems*, clearly held that unlike infringement cases, the claimant's knowledge, rather than the date of the issuance of the patent, controls for establishing the period of delay. *Id.* at 1161-62. In that case, however, the period of delay at issue occurred after the issuance of the patent. The Circuit has not, therefore, explicitly ruled on whether the period of delay may begin prior to the issuance of a patent. For the following reasons the Court finds that the period of delay may begin prior to the issuance of a patent.

First, the rationale of *Advanced Cardiovascular Systems* counsels in favor of this finding. In *Advanced Cardiovascular Systems*, the Circuit reasoned that laches apply at any time that inventorship may be remedied, but should not apply before the omitted inventor has learned of the claim. *See id.* at 1162. The Circuit's rationale is "in harmony with the patent statute, for in accordance with 35 U.S.C. § 256 inventorship may be corrected at any time, whether by direct application to the commissioner or by the court." *Id.* (footnote omitted). The Court noted that "[w]ere laches measured constructively from the date of patent issuance, an erroneously omitted inventor could be barred from remedy before he or she learned of the existence of the patent." *Id.* This, the Circuit held, is not in keeping with "either § 256 or the practice that allows challenges to patent validity throughout the patent life."

While not discussed in *Advanced Cardiovascular Systems*, pursuant to 35 U.S.C. § 116, correction of inventorship may be accomplished prior to the issuance of a patent by application to the commissioner. *See* 35 U.S.C. § 116; 37 C.F.R. § 1.48. In addition, an action to correct inventorship while the patent application is still pending, under 35 U.S.C. § 116, includes the

6

requirement that such amendment must be diligently made. *See* 37 C.F.R. § 1.48; *Stark v. Advanced Magnetic, Inc.,* 29 F.3d 1570, 1574 (Fed Cir. 1994). The requirement of diligence supports a finding that delay is discouraged, and laches may apply, even at these early stages. Thus, the rationale of *Advanced Cardiovascular Systems,* that laches may apply at any time that inventorship may be remedied but should not apply before the omitted inventor has learned of the claim, applies in equal force to the time during which a patent application is pending, but before it is issued. *See id.* at 1162.

Next, at least one other district court has found that in correction of inventorship actions "the time period for laches commences when [Plaintiff] knew, or reasonably should have known, that Defendants had filed an application for a patent on the system, and failed to name him." *Frugoli v. Fougnies*, 74 U.S.P.Q.2d 1716, 1719 (D. Ariz. 2004). Finally, while *Advanced Cardiovascular Systems* involved a situation in which, unlike the instant case, an omitted inventor gained knowledge about the omission *after* the date of the patent, the language of the opinion is broad and counsels against delaying the beginning of the laches period until after the issuance of the patent. Thus, the Court finds that the period of delay is measured from when the claimant had actual notice of the claim or would have reasonably been expected to inquire about the subject matter. *See Advanced Cardiovascular Systems*, 988 F.2d at 1161-62.

In the instant case, it is undisputed on this record that Moore knew that Beard filed a copy of the provisional application around December 31, 1997 and that Beard was listed as the sole inventor. (UF ¶¶ 16-17.) Moore also repeatedly testifies to his knowledge, from 1997 forward, of the provisional application, the facts surrounding its prosecution and his desires to acquire or license the '712 Patent. (*See, e.g.*, Huber Decl., Exh. 1 at 412:21-414:7.) On this record, therefore, there are no triable issues of material fact as to the date Plaintiff knew, or should have known, of the facts underlying the inventorship claim. Instead, it is undisputed that Plaintiff knew, by December 31, 1997, of the filing of the application which resulted in the '712 Patent and knew at that time that it failed to name him as an inventor. Thus, more than eight years passed from when Plaintiff knew he was not named as an inventor and the filing of this action, thus establishing the requisite period of

1 delay. Plaintiff's contentions to the contrary are unavailing.[2]

2 The Court therefore applies a presumption of laches with respect to Moore. Accordingly, unreasonable delay and material prejudice "*must* be inferred, absent rebuttal evidence." *Aukerman,* 960 F.2d at 1037 (emphasis in original). The burden of coming forward with "evidence sufficient to support a finding of the nonexistence of a presumed fact" is shifted to Moore. *Id.* at 1037. Moore can meet his burden of production, and "burst" the presumption bubble, by introducing "evidence sufficient to raise a genuine dispute as to *either* delay or prejudice." *Hemstreet*, 972 F.2d at 1293.

At oral argument, Plaintiff's counsel conceded that if the Court applies the presumption of laches in this case, Plaintiff has no good argument as to why the Court should not grant the Motion. That said, the Court reviews the evidence presented as to both reasonableness and prejudice.

### B. Reasonableness of Moore's Delay

To overcome the presumed fact of unreasonable delay, Moore "bears the burden only of coming forward with sufficient evidence to raise a genuine factual issue respecting the reasonableness of [his] conduct." *Aukerman,* 960 F.2d at 1039. The Court must weigh any justification offered by the plaintiff. *Id.* at 1033. The Court, carefully considering all of the evidence submitted by Moore, finds that Moore has failed to meet this burden.

Moore proffers one excuse as to his delay in filing suit. Moore contends that Beard omitted Moore as an inventor of the '712 Patent so that Norand/Intermec would pay for its prosecution. (Plf.'s Opp. at 15-16.) Without the omission of Moore as an inventor, the argument goes, Norand/Intermec would not have agreed to prosecute the patent because they did not receive an assignment from Moore, only from Beard. (*See id*.) Thus, Beard proceeded as the sole inventor with Norand/Intermec, with the hopes of one day buying back the '712 Patent. (*See id*.) In the meantime, Plaintiff asserts that Beard forcefully induced Moore to take no action and thereby not "make waves." (*See id*.)

The evidence in the record is as follows. Moore testified that Beard asked, and encouraged,

---

[2] Plaintiff states, in his responses to interrogatories, that it was not until 2004 that he learned that he could correct the '712 Patent to reflect the names of the true inventors. (*See* Harding Decl., Exh. G at 4:10-24.) Plaintiff does not raise this argument in the Opposition. Even if raised, however, this argument is not meritorious because Plaintiff's knowledge of the facts, not knowledge of the law, is the critical question and Plaintiff does not dispute that he was aware of the provisional application on the date it was filed. (*See id.* at 4:10-13.)

8

Moore and other Alation colleagues to file the patent application with him, but that they did not have the resources to do so. (*See, e.g.*, Huber Decl., Exh. 1 at 414:5-7.) Moore testified that Beard thought that Norand was a safe place to "park" the intellectual property, which Moore and Beard could then license back or obtain from Norand at a later date. (*See, e.g., id*. at 4:22:19-423:5.) In the meantime, Moore lobbied Beard to get a license for the patent so the two of them could compete with TiVo, but Beard discouraged him from doing so at that time. (*See, e.g.*, *id*. at 413:10-19.) Beard also discouraged Moore from contacting anyone at Norand/Intermec regarding the patent. (*See, e.g.*, *id.* at 186:14-16, 198:21-23.)

Viewing this evidence in a light most favorable to Plaintiff, the "scheme" Moore asserts does not create a genuine issue of fact as to the *reasonableness* of Moore's delay. Instead, the evidence shows that Moore and Beard together decided that Beard should pursue the patent as the sole inventor with Norand/Intermec. Then, after the application was underway, Beard refused to pursue a license or purchase of the '712 Patent with Moore, even though Beard hoped to license, or purchase, the patent from Norand/Intermec at a later date. The evidence does not, however, show why Moore could not have asserted his inventorship rights at an earlier date. Instead, the "scheme" appears to have more to do with the issue of licensing, or purchasing, the patent and not the inventorship issue itself. Most importantly, however, Plaintiff was a party to the alleged scheme against Norand/Intermec and/or the Patent Office and has not offered evidence that raises a genuine factual issue as to why the delay that resulted from his own scheme was reasonable. On this record, therefore, Plaintiff has not raised a genuine factual issue as to the reasonableness of his delay.

### C. Material Prejudice

Material prejudice "may be either economic or evidentiary." *Aukerman*, 960 F.2d at 1033. A showing of *either* evidentiary or economic prejudice constitutes material prejudice. *Id.* As with the element of unreasonable delay, material prejudice is presumed and Moore bears the burden of production.

#### 1. Economic Prejudice

"Economic prejudice may arise where a defendant will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Aukerman*,

9

960 F.2d at 1033. Expenditures and investments must have a "nexus" to the patentee's delay in filing suit. *Hemstreet*, 972 F.2d at 1294. "It is not enough that the alleged infringer changed his position – i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity." *Id.* However, "there is a difference between prejudice that results from delay and prejudice that is due to reliance upon delay." *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 n.1 (Fed. Cir. 1992). Defendants "need not show that they relied on [the patentee's] delay to establish laches. However, they must show that the prejudice they suffered resulted from the delay." *Id.*

Because of the presumption, Moore bears the burden of production and must come forward with evidence sufficient to raise a genuine factual issue as to whether economic prejudice exists. Plaintiff does not submit any evidence on this point. Instead, Plaintiff argues that Defendants' evidence does not demonstrate that Broadcom actually spent any material sums on the '712 Patent that it might not have spent had it known of Moore's claims.[3] (Plf.'s Opp. at 14.) Plaintiff has therefore failed to meet its burden of production by failing to come forth with sufficient evidence to negate the presumed fact of economic prejudice.[4] *See Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996) (holding that under the presumption, "defendants could have remained utterly mute on the issue of prejudice and nonetheless prevailed").

### 2. Evidentiary Prejudice

Evidentiary prejudice may arise where the "defendant's ability to present a full and fair

---

[3] Plaintiff also requests a continuance of this hearing under Rule 56(f) if "the court puts any credence in Broadcom's claims of economic prejudice." (Plf.'s Opp. at 15.) Plaintiff, however, does not state what specific evidence he could obtain with a continuance which would prevent summary judgment. Defendants also object to this request in their "Responses to Moore's Objections to Evidence." At oral argument, Plaintiff's counsel went so far as to concede that if the Court applied the presumption of laches, the Motion should probably be granted. Thus, the Court perceives no justification for granting a continuance under Rule 56(f).

[4] While Plaintiff fails entirely to meet the burden of production on this point, Defendants submit evidence that Moore's unreasonable delay has caused a "whirlwind" of economic prejudice including: (1) Intermec's reliance on Moore's silence while prosecuting the '712 Patent and Intermec's subsequent representations and warranties to Broadcom of full ownership; (2) Broadcom's reliance upon Intermec's warranties and Moore's silence when it paid $24 million for a multi-patent acquisition which included the '712 Patent; (3) Broadcom's bringing of a patent infringement lawsuit; and (4) Broadcom's licensing of the patent to various third parties. (*See* Brazeal Decl. ¶¶ 2-10.) Plaintiff raises evidentiary objections to these paragraphs of the Brazeal declaration based on Declarant's lack of personal knowledge, hearsay, and violations of the best evidence rule. Upon review, the Court finds that Plaintiff's evidentiary objections are not meritorious. Defendants' evidence, therefore, serves to further support the proposition that Defendants suffered economic prejudice.

1 defense on the merits due to the loss of records, the death of a witness, or the unreliability of
2 memories of long past events" undermines the Court's ability to judge facts. *Aukerman*, 960 F.2d at
3 1033.

4 Defendants argue that they will suffer from evidentiary prejudice because Moore has no
5 contemporaneous records of events, Moore repeatedly admitted his inability to recall details of the
6 events asserted to have taken place years ago, other witnesses have expressed difficulty with
7 remembering events from years ago and the dates and events in the record are inconsistent given the
8 passage of time. (*See* Defs.' Mem. of P. & A. at 15.) Plaintiff argues that Defendants have failed to
9 offer admissible evidence of evidentiary prejudice and that Moore, not Defendants, is actually
10 prejudiced by the passage of time. (Plf.'s Opp. at 14.) Plaintiff, however, does not submit any
11 evidence to rebut the presumption.

12 Plaintiff, therefore, has failed to meet its burden of production by failing to come forth with
13 sufficient evidence to negate the presumed fact of evidentiary prejudice. *See Hall*, 93 F.3d at 1554.

### D. Weighing Of Factors In Exercise Of This Court's Discretion.

15 The Court considers "all pertinent facts and equities" based on undisputed facts, including
16 the more than eight year delay, the presumed and unrebutted fact of unreasonable delay and the
17 presumed and unrebutted fact of material prejudice. On this basis, the Court exercises its equitable
18 discretion to grant Defendants' Motion for Laches on Plaintiff's inventorship claim. Plaintiff's
19 unjust enrichment claim, and Defendants' Motion for Summary Judgment on that claim, is moot as it
20 is premised entirely on the declaration of inventorship rights.

## CONCLUSION

22 For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.
23 The Clerk of the Court is directed to close the file.

24 **IT IS SO ORDERED.**

25 Dated: February 12, 2008

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE